**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NEXTHOME, INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:20-cv-01210-CCB |
| CRAIG JENKINS, et al | * | |
| Defendants. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**REPORT & RECOMMENDATION**</u>

This Report and Recommendation addresses Plaintiff NextHome, Inc.'s ("NextHome") Motion for Default Judgment as to Defendant Craig Jenkins and Defendant NXT Home LLC (together, "Defendants"). (ECF No. 17). Defendants have not filed a response and the time to do so has now passed. *See* Loc. R. 105.2.a (D. Md. 2018). On January 5, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Blake referred this case to me for a report and recommendation on Plaintiff's Motion for Default Judgment. For the reasons more fully explained below, I respectfully recommend that Plaintiff's Motion for Default Judgment be GRANTED.

## I.   FACTUAL AND PROCEDURAL HISTORY

NextHome commenced this action against Defendants on May 12, 2020, alleging trademark infringement and false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(a), and Maryland common law claims of trademark infringement and unfair competition. (ECF No. 1). NextHome offers "real

estate brokerage and mortgage brokerage services, and owns Federal Trademark Registration No. 2,192,807 for the "NEXTHOME®" trademark ("NEXTHOME Trademark"). *Id.* at ¶¶ 10; 13. The NEXTHOME Trademark was registered with the U.S. Patent and Trademark Office ("USPTO") on September 29, 1998, and has been in "constant interstate use" since that time. *Id.* at ¶¶ 13; 16. The NEXTHOME Trademark is "strong," "inherently distinctive," and "represents the exceedingly valuable goodwill of NextHome." *Id.* at ¶ 17.

Defendant Jenkins created Defendant NXT Home LLC, a limited liability corporation, with its principal place of business in Crofton, Maryland, on August 18, 2018. (ECF No. 1 at ¶¶ 8; 19; 27). Defendants are also in the "mortgage brokerage and lending services," and "real estate marketing" industries. *Id.* at ¶¶ 20; 27. To promote their services, Defendants established websites with domain names including www.nxthomemortgage.com and www.nexthomesolutions.com. *Id.* at ¶¶ 20; 28. On December 5, 2019, NextHome sent a letter to Defendant Jenkins "demanding that he cease infringing" the NEXTHOME Trademark. *Id.* at ¶ 23. Less than two weeks later, and without responding to NextHome's letter, Defendant Jenkins filed an application (No. 88/728587) with the USPTO to register a trademark for "NXT HOME MORTGAGE" for "mortgage brokerage; mortgage lending."[1] *Id.* at ¶ 24. Notwithstanding NextHome's "demands to cease and desist all infringing activities," Defendants refused, and "continue to market, promote, provide, and sell" services similar to that which NextHome offers its customers. *Id.* at ¶¶ 31–33. At no point did NextHome authorize or license Defendants' actions. *Id.* at ¶ 29.

Service of process was effected on Defendants on May 1, 2020. (ECF Nos. 8; 9). Defendants did not file an answer or responsive pleading within the requisite time period. Upon

---

[1] At the time of Plaintiff's Complaint, Defendant Jenkins' USPTO application remained pending. (ECF No. 1 at ¶ 25). A USPTO Office Action rejected the application on March 18, 2020 because it is likely to cause confusion with the NEXTHOME Trademark. *Id.*

Plaintiff's Motion for Entry of Default against Defendants (ECF No. 11), the Clerk entered judgment in Plaintiff's favor on July 6, 2020.  (ECF No. 14).  Plaintiff then filed its Motion for Default Judgment on September 11, 2020, seeking various forms of relief, including (1) a permanent injunction; (2) an order requiring Defendants to transfer to NextHome any domain names incorporating the NEXTHOME Trademark; (3) an order directing Defendants to withdraw USPTO Application No. 88/728587; (4) an order directing Defendants to provide NextHome with a report of its gross sales from January 2018 to present and to appear for a hearing on an accounting of Defendants' profits earned in conjunction with the NEXTHOME Trademark or confusingly similar trademarks; (5) treble damages for deliberate and willful trademark infringement and false designation of origin; (6) costs and attorneys' fees, with pre- and post-judgment interest; and (7) an order requiring Defendants to destroy all materials bearing the NextHome Trademark or confusingly similar trademarks.  (ECF No. 17).

## II.    STANDARD FOR ENTRY OF DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 governs entries of default and default judgments.  Rule 55(a) requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Where a plaintiff's claim is not "sum certain" or a "sum that can be made certain by computation," the plaintiff "must apply to the court for default judgment" under Rule 55(b)(2).  Fed. R. Civ. P. 55(b)(1)–(2).

In determining whether to award a default judgment, the Court accepts as true the wellpleaded factual allegations in the Complaint as to liability.  *Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).  Nonetheless, the Court must consider whether the

unchallenged facts constitute a legitimate cause of action because a party in default does not admit mere conclusions of law. *United States v. Redden*, No. 09-cv-2688-WDQ, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the Court determines that liability is established, the Court must then determine the appropriate amount of damages or other relief. *CGI Fin., Inc., v. Johnson*, No. 12-cv-1985-ELH, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In this regard, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593. A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *Redden*, 2010 WL 2651607, at *2. Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages; it may rely on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

4

### III.   ANALYSIS

#### A.   *Liability*

1.   <u>Trademark Infringement and False Designation of Origin/Unfair Competition[2]</u>

To state a claim for federal trademark infringement, a plaintiff must prove that (1) it owns a valid mark; (2) the defendant used the mark "in commerce," and without the plaintiff's authorization; (3) the defendant used the mark or imitation thereof "in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) the defendant's use of the mark is likely to confuse consumers.  *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (quoting 15 U.S.C. § 1114(1)(a)); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C. §§ 1114, 1125(a)).

NextHome has sufficiently demonstrated that it owns a valid trademark: the NEXTHOME Trademark.  Registration of a trademark with the USPTO provides the registrant with *prima facie* evidence of the validity of the mark, the registrant's ownership, and the registrant's exclusive right to use the mark.  *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (citing *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001)).   The NEXTHOME Trademark bearing Registration No. 2,192,807, is registered to Next Home, Inc., as of September 29, 1998.  (ECF No. 17-2 at 82–83).  Moreover, the NEXTHOME Trademark is incontestable under 15 U.S.C. § 1065—that is, the "mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce"— because NextHome has made constant interstate use of the mark since September 1997.  (ECF Nos. 17-1 at 5; 17-3 at 2).

---

[2] The analysis for claims of false designation or origin/unfair competition is principally the same as the analysis for trademark infringement.  *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 594 (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va. Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)).

NextHome also satisfactorily asserts that Defendants used the confusingly similar NXT HOME MORTGAGE mark "in commerce," "in connection with the sale, offering for sale, distribution, or advertising of goods or services," and without authorization. *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)); (ECF No. 17-1 at 6).  Exhibit A, attached to Plaintiff's Complaint, shows the NXT HOME MORTGAGE mark displayed on Defendants' website in furtherance of Defendants' "mortgage brokerage [and] mortgage lending" services. (ECF No. 1-1; *see also* ECF No. 17-2 at 60–72 (same)).  Additionally, Defendants use the mark in the domain name of their website: nxthomemortgage.com.  (ECF No. 17-1 at 6).  Indeed, Defendants' own application to the USPTO asserts that the NXT HOME MORTGAGE mark was used in commerce as early as June 2018.  (ECF No. 17-2 at 12).

To the fourth prong of the analysis, Defendants' use of the NXT HOME MORTGAGE mark is likely to confuse consumers.  On this point, to determine the likelihood of confusion, the Court looks to several non-exhaustive factors:

> (1) the strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion.

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog*, LLC, 507 F.3d 252, 259 (4th Cir. 2007) ("*Louis Vuitton*") (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1572 (4th Cir. 1984)).  These factors "are not always weighted equally, and not all factors are relevant in every case."  *Louis Vuitton*, 507 F.3d at 260.  Instead of "indulg[ing] in a prolonged and minute comparison of the conflicting marks . . . ," courts "look to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion."  *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (citations omitted).

Here, NextHome satisfies the likelihood-of-confusion test.  NextHome asserts that its mark is strong and inherently distinctive.  (ECF No. 1 at ¶ 17).  The NEXTHOME Trademark has been in use for over twenty years in more than 448 franchised locations throughout the United States, including nine Maryland locations.  (ECF No. 17-1 at 2).  Defendants have almost entirely incorporated the NEXTHOME Trademark into their own NXT HOME MORTGAGE mark.  Total incorporation of this sort indicates similarity between the marks.  Additionally, the similarity of services between NextHome and Defendants suggests that the marks are likely to be confused; both offer "mortgage brokerage services."  *Id.* at 6.  Beyond this factored test, the Supreme Court has made clear that the same likelihood of confusion analysis applies for purposes of infringement as it does for purposes of registration.  *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154–55 (2015).  Therefore, this Court credits the USPTO's Office Action dated March 18, 2020, in which Defendants' NXT HOME MORTGAGE "applied-for mark [was] refused because of a likelihood of confusion with" the NEXTHOME Trademark.  (ECF No. 17-2 at 15).  The Office Action clarifies in even greater detail the similarity of the marks and relatedness of the services causing the USPTO to refuse Defendants' applied-for mark because of the likelihood of confusion.  *Id.* at 15–17.  This Court agrees.

Accordingly, because I would conclude that NextHome adequately alleged (and proved by affidavit and evidence submitted to the Court) trademark infringement and false designation of origin/unfair competition, I recommend that Plaintiff's Motion for Default Judgment be granted as to Counts I, II and V of Plaintiff's Complaint.[3]

---

[3] Count V sounds in state common law trademark infringement and unfair competition.  "Under the common law of Maryland, the applicable test for unfair competition is the same likelihood of confusion test applied under the Lanham Act."  *Putt-Putt, LLC v. 416 Constant Friendship, LLC*, 936 F. Supp. 2d 648, 659 (D. Md. 2013) (citing *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir. 1992)).  Therefore, because NextHome has demonstrated a likelihood of confusion under the Lanham Act, the Court recommends default judgment be granted as to the state common law claims of trademark infringement and unfair competition as well.

Count IV of Plaintiff's Complaint seeks an order directing Defendants to withdraw, with prejudice, their infringing trademark application of "NXT HOME MORTGAGE."  (ECF Nos. 1 at 9–10; 17-1 at 10).  Federal courts, in addition to their power to grant injunctive relief, are empowered "to *prevent* the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation" under § 1125(a)–(c).  *See* 15 U.S.C. § 1116(a) (emphasis added).  To prevent such violations, a court may direct a trademark applicant to withdraw an application.  *See Sevex North America Inc. v. Ragland*, 2007 WL 9702302, at \*6 (N.D. Ga. Mar. 16, 2007) (collecting cases).  Here, Defendants—after receiving NextHome's cease and desist letter—filed a trademark application for NXT HOME MORTGAGE (Application No. 88/728587).  While the application was rejected by the USPTO, to protect the NEXTHOME Trademark, and prevent further violation of the rights arising thereunder, I recommend that Plaintiff's Motion for Default Judgment be granted as to Count IV of Plaintiff's Complaint.

2.    <u>Cybersquatting</u>

"Cybersquatting is the practice of registering 'well-known brand names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'"  *Zinner v. Olenych*, 108 F. Supp. 3d 369, 378 (E.D. Va. 2015) (citing *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001)).  Under the ACPA, a plaintiff must prove that "(1) Defendants registered, trafficked in, or used a domain name; (2) that was identical or confusingly similar to a mark owned by Plaintiff; (3) that such mark was distinctive at the time Defendants registered the domain name; and (4) Defendants did so with a bad faith intent to profit from such mark."  *Zinner*, 108 F. Supp. 3d at 379 (citing *Lamparello v. Falwell*, 420 F.3d 309, 318 (4th Cir. 2005); *see also* 15 U.S.C. § 1125(d)(1)(A).

NextHome has demonstrated the requisite bad faith intent to profit from the NEXTHOME Trademark.

In considering whether Defendants' acts rise to the level of "bad faith intent to profit," the ACPA provides nine factors for consideration:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).  Applying this test, "[t]he first four factors suggest circumstances tending to indicate an absence of bad faith intent to profit from the goodwill of the mark, the next four tend to indicate that such bad faith does exist and the last factor points in either direction, depending on the degree of distinctiveness and fame of the mark."  *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 432 (S.D.N.Y. 2013) (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:78 (4th ed. 2003)).

While the above factors are a helpful guide; courts are not limited to them, and not every factor must be considered.  *See Applause Prod. Grp. v. Showtime Events Inc.*, Civ. No. GJH-16-1463, 2017 WL 1906588, at *5 (D. Md. May 4, 2017) ("*Applause*") ("[N]ot every factor must be considered, as these factors are 'intended to serve as a guide while the court carefully considers whether the conduct at issue is motivated by a bad faith intent to profit.'") (quoting *Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 582 (E.D. Va. 2016), *aff'd*, No. 16-2053, 2017 WL 1019059 (4th Cir. Mar 15, 2017).  Instead, courts in this Circuit "view the totality of the circumstances in making the bad faith determination."  *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 435 (4th Cir. 2011) (quoting *Virtual Works, Inc.*, 238 F.3d at 270).

Various facts alleged in Plaintiff's Complaint support factors that indicate the absence of bad faith.  Defendants' domain—www.nxthomemortgage.com—is consistent with Defendants' "doing business as" name—"NXT HOME MORTGAGE."  (ECF No. 1 at ¶¶ 19–20).  Such facts tend to establish factor two because the domain name wholly incorporates Defendants' legal name. Plaintiff also attached screen captures of Defendants' website bearing the NXT HOME MORTGAGE mark.  (ECF No. 1-1).  The website offers various online "tools" such as a "Home Purchase Qualifier," "Refinance Rate Checker," "refinance analysis request," and "30-Year Fixed Rate Mortgage Qualifier," and explanatory information related to these services.  *Id.* at 4–13.  This

information tends to support the existence of factor three because it appears Defendants used the domain in connection with the bona fide offering of mortgage brokerage services.  In all, this Court finds the existence of factors two and three weigh against a finding of cybersquatting.

Plaintiff points to factor five—"the person's intent to divert consumers from the mark owner's online location"—and factor eight—"the person's registration or acquisition of multiple domain names"—to demonstrate that cybersqatting occurred in the instant case.  (ECF No. 17-1 at 7–8).   To factor five, Defendants registered domain names wholly incorporating the NEXTHOME Trademark (www.nexthomesolutions.com), to divert customers and promote the same services as offered by NextHome.  (ECF No. 1 at ¶ 28; ECF No. 17-1 at 8).  To factor eight, the Plaintiff (and by extension, the Court) is aware of at least one other confusingly similar domain names registered by Defendants: www.nxthomemortgage.com.[4]  (ECF No. 1 at ¶ 20; 28; ECF No. 17-1 at 8).  Beyond the domain names of which Plaintiff is aware, Plaintiff also represents that Defendants "bought up as many [domain names] as he could think of and is sitting on them."  (ECF No. 17-3 at 3; 6).  This Court agrees with Plaintiff that factors five and eight weigh in favor of a finding of cybersquatting.

In addition to the enumerated factors contained in § 1125, "the Court's inquiry in a[n] ACPA case must be guided by an overall evaluation of how closely the defendant's conduct falls into the 'ACPA's heartland.'" *Applause*, 2017 WL 1906588, at *6 (D. Md. May 4, 2017) (quoting *Gioconda Law Grp. PLLC*, 941 F. Supp. 2d at 433).  More specifically, *Gioconda* discusses two principal examples of bad faith behaviors that the ACPA seeks to combat:

> where a defendant "purchases a domain name very similar to the trademark and then offers to sell the name to the trademark owner at an extortionate price," and where a defendant "intend[s] to profit by diverting customers from the website of

---

[4] Plaintiff asserts that Defendants also registered www.nxthomeloans.com; however, such is not alleged in the complaint, and, where mentioned in the Motion for Default Judgment, is not supported by affidavit or other evidence.

the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's.

*Id.* (quoting *Gioconda Law Grp. PLLC*, 941 F. Supp. 2d at 434).

There is no evidence that Defendants obtained the domain names at issue to then sell them to NextHome at an extortionate price. If anything, Defendants' representation to NextHome—i.e., that Defendants "will not release the domain name [nexthomesolutions.com] he said because he bought up as many as he could think of and is sitting on them"—demonstrates Defendants' intent *not* to sell the domain names. (ECF No. 17-3 at 6). Such behavior, while potentially done in bad faith, does not rise to the level of bad faith *intent to profit* under the ACPA. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246–47 (11th Cir. 2009) (relying on the ACPA's Senate Report, which "says nothing about those who hold onto a domain name to prevent a competitor from using it," in determining that bad faith alone is not enough; the same must be accompanied by an intent to profit). On the other hand, however, the evidence before the Court shows that Defendants' actions fall into the second classic example of cybersquatting. The Court concludes that by incorporating the NEXTHOME Trademark and similarly confusing phrases into its domain names, Defendants possessed a bad faith intent to profit by diverting customers from NextHome's website (as owner of the NEXTHOME Trademark) to the Defendants' own website, where those consumers would purchase the Defendants' services over NextHome's.

Therefore, I recommend that Plaintiff's Motion for Default Judgment be granted as to Count III.

**B.    *Relief Requested by NextHome***

1.    <u>Injunctive Relief</u>

The Lanham Act empowers a court to grant injunctive relief "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a

violation under [§ 1125(a)]." 15 U.S.C. § 1116(a).  For a permanent injunction to properly issue, the plaintiff must demonstrate the following: "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (citing *eBay, Inc. MercExchange*, 547 U.S. 388, 391 (2006)).  Because Plaintiff has satisfactorily shown the existence of these factors, this Court recommends that a permanent injunction is appropriate.

First, NextHome has suffered an irreparable injury.  The Fourth Circuit has made clear that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va. Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (citation omitted).  In addition, "damage to a business's reputation and goodwill 'may fairly be characterized as irreparable in nature.'" *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 596 (quoting *Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC 2009–0111, 2009 WL 3348231, at *3 (D. Md. Oct. 15, 2009) (internal quotations omitted)).  NextHome asserts that Defendants attempted to "trade upon [NextHome's] goodwill and reputation." (ECF No. 17-1 at 9).  As such, and given the findings above, the Court concludes NextHome has suffered an irreparable injury.

Second, other remedies available at law, such as monetary damages, are inadequate to compensate NextHome's injuries.  This element is established by Defendants' refusal to participate in this litigation; a threat of continuing infringement remains.  *See Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 596; *Legacy Inv. and Mgmt., LLC v. Susquehanna Bank*, Civ. No. WDQ-12-2877, 2014 WL 836077, at *4 (D. Md. Feb. 28, 2014).  Third, Defendants' trademark infringement in violation of the Lanham Act tips the balance of hardship in favor of NextHome.  Fourth, and finally, "the public interest would not be disserved by a permanent injunction, as there is greater

public benefit in securing the integrity of [NextHome's] mark than in allowing Defendant to continue to use the mark in violation of [NextHome's] rights." *Innovative Value Corp.*, 2009 WL 3348231, at *3 (D. Md. Oct. 15, 2009).

Therefore, as more particularly described in the accompanying order, this Court recommends that Defendants are permanently enjoined from the following:

> (1) Using the NEXTHOME Trademark or any confusingly similar phrases, trademarks, or trade names, including "NXT HOME MORTGAGE," "NEXT HOME SOLUTIONS," "NXT HOME LLC," and "Nxthomelending," in connection with the advertising promotion, provision, and marketing or Defendants' services, including as incorporated in domain names, social media accounts, social media group titles, and other online platforms;

> (2) Representing by words or conduct that Defendants or their services are authorized, sponsored, endorsed, or otherwise connected with NextHome;

> (3) Marketing and providing any goods or services that bear the NEXTHOME Trademark or confusingly similar trademarks, such as "NXT HOME MORTGAGE," or "NEXT HOME SOLUTIONS," including but not limited to displaying promotional and marketing materials on outlets such as websites, social media platforms, and other sources available over the internet; and

> (4) Filing or pursuing with any governmental entity, including the United States Patent and Trademark Office, an application or request to register a business name, d/b/a, or trademark that includes the NEXTHOME Trademark or confusingly similar phrases.

> (5) Engaging in any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection, or association of the services offered by Defendants, including but not limited to any infringement of the NEXTHOME Trademark.

2.    <u>Damages</u>

Under the Lanham Act, a plaintiff who properly establishes a violation "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3)

the costs of the action."   15 U.S.C. § 1117(a).   Here, NextHome seeks an accounting of Defendants' profits, costs, and attorneys' fees.[5]  The Court will address each in turn.

For a plaintiff to obtain an accounting of defendants' profits, the plaintiff must show that defendant acted in bad faith.  *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 466 (D. Md. 2002) (citation omitted).  A finding of bad faith requires that the "defendant acted with 'wilful deception' or 'with the deliberate intent to cause confusion, mistake or to deceive purchasers.'"  *Id.* (citation omitted).  Here, Defendants' lack of participation in the litigation prevents a determination of actual damages.  Nevertheless, "[t]he unavailability of actual damages as a remedy does not preclude a plaintiff from recovering an accounting of the defendant's profits."  Taking into account NextHome's assertions that Defendants' use of the NXT HOME MORTGAGE mark and NXT HOME mark has been "willful, deliberate, unfair, false, [and] deceptive," the evidence presented in support of NextHome's Motion, and the findings above, the Court recommends granting NextHome an accounting of Defendants' profits *Id.* (citation omitted).

As it pertains to costs, the Federal Rules provide that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Indeed, the Lanham Act enables a successful plaintiff to recover costs.  *See* 15 U.S.C. § 1117(a).  In "exceptional cases," the Court may also award reasonable attorneys' fees. This Court agrees with NextHome that the instant case qualifies as an "exceptional" one.  *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) (reasoning

---

[5] While NextHome's Complaint seeks damages, its Motion for Default Judgment does not.  Instead, NextHome's Motion for Default Judgment simply seeks treble damages pursuant to 15 U.S.C. § 1117(a).  (ECF No. 17-1 at 9).  The Court recommends deferring a decision on both damages and treble damages until after an accounting of Defendants' profits and Plaintiff's actual damages can be determined.  To award treble damages before determining that there even exist damages, and said damages are not assuaged by the injunctive relief awarded today, would be premature.  *See Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175–76 (4th Cir. 2006) (noting several factors for consideration in determining whether a damages award is appropriate, including "whether sales have been diverted," and "the adequacy of other remedies").

that "a case may be considered 'exceptional' where the defendant disregards the proceedings and does not appear") (citation omitted). Therefore, as the prevailing party, this Court recommends that NextHome may recover costs and fees in an amount to be determined after the same can be accurately and readily determined—i.e., once the aforementioned accounting of Defendants' profits is complete—and requested in accordance with Federal Rule of Civil Procedure 54(d) and Local Rule 109.

## IV.   CONCLUSION

In sum, I recommend that:

1.     The Court GRANT Plaintiff's Motion for Default Judgment (ECF No. 17) as to Counts I, II, III, IV and V.

2.     The Court enjoin Defendants from the following:

> Using the NEXTHOME Trademark or any confusingly similar phrases, trademarks, or trade names, including "NXT HOME MORTGAGE," "NEXT HOME SOLUTIONS," "NXT HOME LLC," and "Nxthomelending," in connection with the advertising promotion, provision, and marketing or Defendants' services, including as incorporated in domain names, social media accounts, social media group titles, and other online platforms;

> Representing by words or conduct that Defendants or their services are authorized, sponsored, endorsed, or otherwise connected with NextHome;

> Marketing and providing any goods or services that bear the NEXTHOME Trademark or confusingly similar trademarks, such as "NXT HOME MORTGAGE," or "NEXT HOME SOLUTIONS," including but not limited to displaying promotional and marketing materials on outlets such as websites, social media platforms, and other sources available over the internet; and

> Filing or pursuing with any governmental entity, including the United States Patent and Trademark Office, an application or request to register a business name, d/b/a, or trademark that includes the NEXTHOME Trademark or confusingly similar phrases.

Engaging in any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection, or association of the services offered by Defendants, including but not limited to any infringement of the NEXTHOME Trademark.

3.      The Court order Defendants to withdraw with prejudice their USPTO application (Application No. 88/728587) seeking to register NXT HOME MORTGAGE.

4.      The Court, pursuant to 15 U.S.C. § 1118, order Defendants to destroy all materials bearing the NEXTHOME Trademark or confusingly similar trademarks, such as "NXT HOME MORTGAGE."

4.      The Court, pursuant to 15 U.S.C. § 1125(d)(1)(C), order Defendants to forfeit or transfer to NextHome any domain name incorporating the NEXTHOME Trademark or the phrase NXT HOME MORTGAGE.

5.      The Court issue an order directing Defendants to provide a report of its monthly gross sales from January 2018 to present, and, if necessary, conduct a hearing on an accounting of Defendants' profits during that period.

6.      The Court defer its determination on the Plaintiff's request for treble damages.

7.      The Court, pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 109, award Plaintiff costs and reasonable attorneys' fees as determined once this matter is concluded.

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendants at the address(es) listed on Plaintiff's Complaint (ECF No. 1).  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

_____/s/_____

Dated: April 12, 2021                                   J. Mark Coulson
                                                        United States Magistrate Judge